## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
## DAVENPORT DIVISION

| | | |
|---|---|---|
| **Sherri Salladay,** | ) | |
| | ) | **CIVIL ACTION NO.  3:13-cv-127** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT AND** |
| | ) | **JURY DEMAND** |
| **Biomet Orthopedics, LLC,** | ) | |
| **f/k/a Biomet Orthopedics, Inc.** | ) | |
| | ) | |
| **Defendant.** | ) | |

Plaintiff, by and through counsel, and for her complaint against Defendant Biomet

Orthopedics, LLC, f/k/a Biomet Orthopedics, Inc. ("Biomet") alleges as follows:

### PARTIES AND JURISDICTION

1.      Plaintiff Sherri Salladay is a resident and citizen of Fort Madison, Iowa, in Lee

County, Iowa.

2.      Plaintiff alleges an amount in controversy in excess of Seventy-Five

Thousand Dollars ($75,000.00), exclusive of interest and costs.

3.      Defendant Biomet Orthopedics, LLC is an Indiana corporation with its

principal place of business in Warsaw, Indiana.  Biomet Orthopedics, LLC was formerly

known as Biomet Orthopedics, Inc.

4.      At all times relevant, Defendant was engaged in the business of designing,

licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate

commerce, either directly or indirectly through third parties or related entities, numerous

prosthetic devices, including bone cement, trade name Biomet Orthopedics Cobalt HV

bone cement, for use in arthroplastic procedures of the hip, knee, and other joints, for the fixation of polymer or metallic prosthetic implants to living bone.

5.     The court has jurisdiction over this action pursuant to 28 U.S.C.§ 1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.     Venue in this district is appropriate under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in the district.  Specifically, Plaintiff Sherri Salladay received medical care and treatment in this venue.

## FACTUAL BACKGROUND

7.     On February 23, 2010, Plaintiff Sherri Salladay underwent left total knee replacement with a Biomet Vanguard system.  As part of the surgery, Plaintiff's surgeon used bone cement; specifically Biomet Orthopedics Cobalt HV bone cement. (See exhibit A).

8.     The bone cement used in Plaintiff's surgery was manufactured by Biomet Orthopedics, Inc., and distributed in the United States by Biomet Orthopedics, Inc., under the trade name Biomet Orthopedics Cobalt HV bone cement.

9.     On December 19, 2011, revision surgery was performed to remove the Biomet Vanguard system and replace it with a DePuy system, to address complaints of pain and disability in the left knee. (See Exhibit B.)

10.     Examination of explanted components revealed evidence of failure of the Biomet Orthopedics Cobalt HV bone cement as the cause of the failure of the knee replacement.

2

11.     Thus, as a direct and proximate result of Defendant's failed and defective bone cement, Plaintiff was required to undergo total knee revision surgery less than two years after her original knee surgery.

12.     As a direct and proximate result of Defendant's failed and defective bone cement, Plaintiff has suffered significant harm, conscious pain and suffering, physical injury and bodily impairment.

13.     As a direct and proximate result of Defendant's failed and defective bone cement, Plaintiff Salladay had to undergo premature revision surgery of her knee, causing further permanent impairment and weakness in her ligaments, bone and muscles.

14.     As a direct and proximate result of Defendant's failed and defective bone cement, Plaintiff Sherri Salladay had to undergo revision surgery less than 2 years after her original knee surgery.  Due to the unexpected and premature failure of Defendant's bone cement, Plaintiff faces a potential of more knee replacement surgeries in the future.

15.     As a direct and proximate result of Defendant's failed and defective bone cement, Plaintiff Sherri Salladay has suffered significant mental anguish and emotional distress and will continue to suffer physical limitations, pain, injury, damages, harm, and mental and emotional distress in the future.

16.     As a direct and proximate result of Defendant's failed and defective bone cement, Plaintiff Sherri Salladay has also incurred medical expenses and other economic harm, and will continue to incur such expenses and other economic harm in the future.

17.     Plaintiff Sherri Salladay's injuries as described herein qualify as a permanent and substantial physical deformity, loss of use of a limb, and/or loss of use of a bodily organ system.

3

## Biomet Orthopedics Cobalt HV Bone Cement

18.     Defendant's Biomet Orthopedics Cobalt HV bone cement is considered a Class II medical device under 21 CFR § 860 and 21 CFR § 888.3027.

19.     Defendant Biomet received marketing approval from the FDA for its Biomet Orthopedics Cobalt HV bone cement under Section 510(k) of the Federal Food, Drug, and Cosmetic Act. See 21 U.S.C. § et seq.

20.     The 510(k) approval process by the FDA is regarded as a simplified application process, which does not require extensive review and approval by the FDA. The 510(k) approval is basically a "grandfathering" process, in which the manufacturer is only required to demonstrate that the device to be marketed is substantially equivalent to a device marketed prior to May 28, 1976. If so, the FDA allows the product to be marketed but does not actually approve the device.

21.     Pursuant to the § 510(k) approval process, Defendant was responsible for complying with the Act's requirements, including but not limited to: registration and listing (21 CFR Part 807); labeling (21 CFR Part 801); good manufacturing practice requirements set forth in the quality systems (QS) regulation (21 CFR Part 820); and, if applicable, the electronic product radiation control provisions (Sections 531-542 of the Act).

## Federal Requirements

22.     Pursuant to federal law, a medical device is deemed to be adulterated if, among other things, it fails to meet established performance standards, or the methods, facilities or controls used for its manufacture, packing, storage or installation are not in conformity with federal requirements. See 21 U.S.C. 22 § 351.

23.    Pursuant to federal law, a device is deemed to be misbranded if, among other things, its labeling is false or misleading in any particular, or if it is dangerous to health when used in the manner prescribed, recommended or suggested in the labeling thereof.  *See* 21 U.S.C. § 352.

24.    Pursuant to federal law, manufacturers are required to comply with FDA regulation of medical devices, including FDA requirements for records and reports, in order to prohibit introduction of medical devices that are adulterated or misbranded, and to assure the safety and effectiveness of medical devices.  In particular, manufacturers must keep records and make reports if any medical device may have caused or contributed to death or serious injury, or if the device has malfunctioned in a manner likely to cause or contribute to death or serious injury.  Federal law also mandates that the FDA establish regulations requiring a manufacturer of a medical device to report promptly to FDA any correction or removal of a device undertaken to reduce a risk to health posed by the device, or to remedy a violation of federal law by which a device may present a risk to health.  *See* 21 U.S. C. § 360i.

25.    Pursuant to federal law, the Secretary of Health and Human Services may prescribe regulations requiring that the methods used in, and the facilities and controls used for, the manufacture, pre-production design validation (including a process to assess the performance of a device), packaging, storage, and installation of a device conforms to current good manufacturing practice (CGMP), as prescribed in such regulations, to assure that the device will be safe and effective and otherwise in compliance with federal law.  *See* 212 U.S. C. § 360j(f)

26.    The regulations requiring conformance to good manufacturing practices

5

are set forth in 21 CFR § 820 *et seq.*  As explained in the Federal Register, because the CGMP regulations must apply to a variety of medical devices, the regulations do not prescribe the details or how a manufacturer must produce a device.  Rather, the quality system regulations provide a framework of basic requirements for each manufacturer to use in establishing a quality system appropriate to the devices designed and manufactured, and the manufacturing processes employed.  Manufacturers must adopt current and effective methods and procedures for each device they design and manufacture to comply with and implement the basic requirements set forth in the qualify system regulations.

27.     Pursuant to 21 CFR § 820.1(c), the failure to comply with any applicable provision in Part 820 renders a device adulterated under section 501(h) of the Federal Food Drug & Cosmetic Act ("the Act") (21 U.S.C. § 351).

28.     The regulations under 21 CFR Part 820 include, but are not limited to, requiring Defendants to:

   a.     establish and maintain a quality system that is appropriate for the specific medical device designed or manufactured. 21 CFR § 820.5;

   b.     establish and maintain procedures to control the design of the device in order to ensure that specific design requirements are met. 21 CFR § 820.30(a);

   c.     establish and maintain procedures for defining and documenting design output in terms that allow an adequate evaluation of conformance to design input requirements.  21 CFR  § 82030(d);

6

d.   establish and maintain procedures for verifying the device design to confirm that the device design output meets the design input requirements.  21 CFR § 820.30(f);

e.   establish and maintain procedures for the identification, documentation, validation or where appropriate verification, review and approval of design changes before their implementation.  21 CFR § 820.30(i) and

f.   develop, conduct, control, and monitor production process to ensure that a device conforms to its specifications. 21 CFR § 820.70(a).

29.    Upon information and belief, Defendant's Biomet Orthopedics Cobalt HV bone cement is adulterated pursuant to 21 U.S.C. § 351 because, among other things, Defendants failed to comply with the numerous regulations under 21 CFR § 820 regarding product design and manufacturing.

30.    Upon information and belief, Defendant's  Biomet Orthopedics Cobalt HV bone cement is adulterated pursuant to 21 U.S.C. § 351 because, among other things, it failed to meet established performance standards, and/or the methods, facilities, or controls used for its manufacture, packing, storage or installation are not in conformity with federal requirements.  *See* 21 U.S.C. § 351.

31.    As a result of Defendants' failure to establish and maintain CGMP, Defendant's  Biomet Orthopedics Cobalt HV bone cement was defective and failed, resulting in a failure to properly adhere to the bone and/or prosthetic device, causing loosening of the device, and injury to  Plaintiff.

32.     Upon information and belief, Defendant's Biomet Orthopedics Cobalt HV bone cement, is misbranded because, among other things, it is dangerous to health when used in the manner prescribed, recommended or suggested in the labeling thereof.  *See* 21 U.S.C. § 352.

## FIRST CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY: DEFECTIVE MANUFACTURING

33.     Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

34.     Defendant is the manufacturer, designer, distributor, seller, and/or supplier of prosthetic devices including the Biomet Orthopedics Cobalt HV bone cement, for use in arthroplastic procedures of the hip, knee, and other joints for the fixation of polymer or metallic prosthetic implants to living bone.

35.     The Biomet Orthopedics Cobalt HV bone cement, manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendant, was defective in its manufacture and construction when it left the hands of Defendant in that it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer and/or applicable federal requirements for these prosthetic devices, posing a serious risk of injury and death.

36.     The Biomet Orthopedics Cobalt HV bone cement was defective in manufacturing and deviated in a material way from the design specifications and/or performance standards such that the bone cement failed to adhere to the bone and/or prosthetic device, caused loosening of the device, and injury to Plaintiff.

8

37.     As a direct and proximate result of Plaintiff Sherri Salladay's use of Defendant's  Biomet Orthopedics Cobalt HV bone cement, as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendant and Defendant's failure to comply with the federal requirements, Plaintiff suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

38.     Defendant's actions and omissions as alleged in this complaint constitute a flagrant disregard for human life and safety, malice, and aggravated and egregious fraud, so as to warrant the imposition of punitive damages.

## SECOND CAUSE OF ACTION

## STRICT PRODUCT LIABILITY: DESIGN DEFECT

39.     Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

40.     Defendant is the manufacturer, designer, distributor, seller, and/or supplier of prosthetic devices including the  Biomet Orthopedics Cobalt HV bone cement, for use in arthroplastic procedures of the hip, knee, and other joints for the fixation of polymer or metallic prosthetic implants to living bone.

41.     The  Biomet Orthopedics Cobalt HV bone cement, manufactured and supplied by Defendant, was defective in design or formulation in that, when it left the hands of the Defendant, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, and/or it failed to comply with federal requirements for these

9

medical devices.

42.    The  Biomet Orthopedics Cobalt HV  bone cement was defective in design such that the risk of failure of the cement to adhere to the bone and/or prosthetic device exceeded the benefits of the device.

43.    The  Biomet Orthopedics Cobalt HV bone cement was defective in design such that the failure of the cement to adhere to the bone and/or prosthetic device was more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

44.    The Biomet Orthopedics Cobalt HV bone cement was defective in that at the time the product left the control of Defendant, a practical and technically feasible alternative design was available that would have prevented the harm for which Plaintiff Sherri Salladay seeks to recover without substantially impairing the usefulness or intended purpose of the product.

45.    As a direct and proximate result of Plaintiff Sherri Salladay's use of the Biomet Orthopedics Cobalt HV bone cement, as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by Defendant and Defendant's failure to comply with the federal requirements, Plaintiff suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

46.    Defendant's actions and omissions as alleged in this complaint demonstrate a flagrant disregard for human life and safety, malice and aggravated and egregious fraud, so as to warrant the imposition of punitive damages.

10

## THIRD CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY
## DEFECT DUE TO INADEQUATE WARNING

47.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

48.     Defendant is the manufacturer, designer, distributor, seller, and/or supplier of prosthetic devices including the Biomet Orthopedics Cobalt HV bone cement for use in arthroplastic procedures of the hip, knee, and other joints for the fixation of polymer or metallic prosthetic implants to living bone.

49.     The Biomet Orthopedics Cobalt HV bone cement, manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendant, was defective due to inadequate warning or instruction because at the time it left the control of Defendant, Defendant knew or should have known that their bone cement was unreasonably dangerous due to its failure to properly adhere to the bone and/or prosthetic device.

50.     Despite the fact the Defendant knew or should have known that their bone cement was unreasonably dangerous due to its failure to properly adhere to the bone and/or prosthetic device, Defendant failed to exercise reasonable care to adequately warn consumers that its bone cement had an increased risk of injury and increased risk of a required revision surgery.

51.     As a direct and proximate result of Plaintiff Sherri Salladay's use of the Biomet Orthopedics Cobalt HV bone cement, as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by Defendant, Plaintiff suffered

serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

52.     Defendant's actions and omissions in this complaint demonstrate a flagrant disregard for human life and safety, malice, and aggravated and egregious fraud, so as to warrant the imposition of punitive damages.


### FOURTH CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY:
### DEFECT DUE TO NONCONFORMANCE WITH REPRESENTATIONS

53.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

54.     Defendant is the manufacturer, designer, distributor, seller, and/or supplier of prosthetic devices including the  Biomet Orthopedics Cobalt HV bone cement, for use in arthroplastic procedures of the hip, knee, and other joints for the fixation of polymer or metallic prosthetic implants to living bone.

55.     The  Biomet Orthopedics Cobalt HV bone cement, manufactured and supplied by Defendant was defective in that, when it left the hands of Defendant, it did not conform to representations made by Defendant concerning the product and/or with applicable federal requirements.

56.     Plaintiff and/or Plaintiff Sherri Salladay's physicians, at the time they selected the Biomet Orthopedics Cobalt HV bone cement to be used in Plaintiff's surgery, justifiably relied upon Defendant's representations that the Biomet Orthopedics Cobalt HV bone cement was safe for use in knee surgery and would conform to the representations

regarding the character and quality of an appropriate bone cement to be used in knee surgery.

57.     As a direct and proximate result of Plaintiff Sherri Salladay's use of the Biomet Orthopedics Cobalt HV bone cement Plaintiff's and Plaintiff's physicians' reliance on Defendant's representations regarding the character and quality of the Biomet Orthopedics Cobalt HV bone cement, Plaintiff suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

58.     Defendant's actions and omissions as alleged in this complaint demonstrate a flagrant disregard for human life and safety, malice, and aggravated and egregious fraud, so as to warrant the imposition of punitive damages.


## FIFTH CAUSE OF ACTION

### FRAUDULENT/NEGLIGENT MISREPRESENTATION

59.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

60.     Defendant, as the manufacturer of prosthetic bone cement being used by physicians and patients in orthopedic surgery, has a general duty not to deceive or misrepresent the safety, quality, characteristics, etc., of the bone cement it designs, manufactures, distributes, sells, and supplies.

61.     In the exercise of reasonable care, Defendant should have known that its Biomet Orthopedics Cobalt HV bone cement failed to comply with federal requirements for

safe design and manufacture and/or was in other ways out of specification or deviated from performance standards, yet Defendant, in breach of its general duty not to deceive, negligently misrepresented to Plaintiff and/or Plaintiff's physicians that its bone cement was safe and met all applicable design and manufacturing requirements.

62.     Defendant negligently and/or fraudulently concealed from Plaintiff and Plaintiff's physicians that its Biomet Orthopedics Cobalt HV bone cement lacked the proper safety, quality, and characteristics to properly adhere to bone and/or prosthetic devices.

63.     Defendant's representations about the safety, quality, and characteristics of its Biomet Orthopedics Cobalt HV bone cement were made with utter disregard and recklessness as to the truth of such representations.

64.     Plaintiff and Plaintiff's physicians reasonably relied to their detriment upon Defendants' misrepresentations that the Biomet Orthopedics Cobalt HV bone cement was safe for use and would perform to its intended purposes and standards.

65.     As a direct and proximate result of Defendant's breach of its duty and negligent misrepresentations about its Biomet Orthopedics Cobalt HV bone cement, Plaintiff Sherri Salladay used Defendant's Biomet Orthopedics Cobalt HV bone cement.

66.     As a direct and proximate result of the failure of Defendant's bone cement, Plaintiff has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

67.     Defendant's actions and omissions as alleged in this complaint demonstrate a flagrant disregard for human life and safety, malice, and aggravated and egregious fraud, so as to warrant the imposition of punitive damages.

14

**WHEREFORE,** Plaintiff Sherri Salladay prays for judgment against Biomet Orthopedics, LLC  in an amount which will fairly and adequately compensate her for the losses incurred, together with interest on said judgment as provided by law and the costs of this action.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on any and all issues related to this case.

Respectfully Submitted,

DUTTON, BRAUN, STACK & HELLMAN, P.L.C.
Attorneys for Plaintiff

BY: _____

James H. Cook, AT0001622
3151 Brockway Road, P.O. Box 810
Waterloo, IA 50704
319-234-4471, 319-234-8029 - Fax
cookj@wloolaw.com

I:\Lit\Med Mal Potential.13\Salladay\Complaint & Jury Demand.wpd

15